IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

HARRISON FRANKLIN,

                Plaintiff,

    v.

MICHAEL DITTMAN, et al.,

                Defendants.

OPINION AND ORDER

18-cv-381-wmc

*Pro se* plaintiff Harrison Franklin has been granted leave to proceed in this lawsuit against certain employees of the Wisconsin Department of Corrections on Eighth Amendment deliberate indifference claims related to alleged deficient care for his diabetes and blood pressure, as well as First Amendment claims related to their alleged harassment of Franklin for complaining about the deficient care. Twenty of the twenty-one defendants are represented by the Wisconsin Department of Justice, so the court refers to them as the "State Defendants." The remaining defendant, Tim Deters[1] (who is no longer employed by the state and represented by separate counsel), will be referenced individually. Following an in-person hearing and multiple telephonic conferences related to Franklin's diabetes treatment and testing protocols, the court issued, and has since modified, a preliminary injunction to ensure that Franklin is permitted consistent opportunities to test his blood on a set schedule, eat breakfast following his morning glucose test, administer proper insulin dosages, and record his readings. (*See* 5/10/2019 Order (dkt. #54); 6/3/2019 Order (dkt. #67); 8/16/2019 Order (dkt. #86).) Moreover, the court's review of the

---

[1] Franklin's complaint spelled his last name "Dieters," but his answer noted that his last name is actually spelled "Deters." (Dkt. #30.) Therefore, the court uses the corrected spelling and directs the clerk's office to correct the case caption accordingly.

documentation provided by the State Defendants suggest that they are complying with the terms of this now modified injunction.

This opinion does not address the injunction, but rather resolves motions currently pending by defendant Tim Deters, for partial summary judgment (dkt. #76) and plaintiff Franklin, for appointment of a medical expert witness (dkt. #95), for assistance in recruiting counsel (dkt. #96), to compel (dkt. #100), and for sanctions (dkt. #101). For the reasons that follow, the court will deny all of these motions, but Franklin's motions for assistance in recruiting counsel and for appointment of a medical expert will be denied without prejudice.

## I.     Defendant Deters' Motion for Partial Summary Judgment (dkt. #76)

As noted above, in addition to an Eighth Amendment medical care deliberate indifference claim, Franklin is proceeding on a First Amendment retaliation claim, based on allegations that defendant Deters and others denied him access to recreation *because* he complained about how his insulin was being administered. Deters seeks summary judgment on this claim on the ground that Franklin failed to exhaust his administrative remedies with respect to this claim.

Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Generally, a prisoner also must "properly take each step within the administrative process" to comply with § 1997e(a). *Pozo v. McCaughtry*, 286 F.3d 1022,

1025 (7th Cir. 2002). This includes following instructions for filing the initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005), and filing all necessary appeals, *Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005), that are "in the place . . . at the time, [as] the [institution's] administrative rules require." *Pozo*, 286 F.3d at 1025.

The purpose of this exhaustion requirement is to give the prison administrators a fair opportunity to resolve the grievance without litigation. *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006); *see Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013) ("once a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the purpose of the exhaustion requirement"). If a prisoner fails to exhaust administrative remedies before filing his lawsuit, then the court must dismiss the case. *Perez v. Wisconsin Dept. of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). Because exhaustion is an affirmative defense, however, *defendants* bear the burden of establishing that a plaintiff failed to exhaust. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

On September 19, 2017, Franklin submitted inmate complaint CCI-2017-26171 against defendants Sergeant Johnson and Unit Manager Fink for denying him recreation privileges because he refused to discuss his medical needs with them. (Ex. A to Reid Decl. (dkt. #79-1) at 8.) Franklin also claimed: "Even after I repeatedly asked HSU (Nurse Deiters to supply me with Lantus at approx. 6:30 am as I had none, I was refused Lantus all that day." (*Id*.) The complaint was initially rejected with instructions for Franklin to attempt to resolve his dispute informally, and Franklin later resubmitted his complaint with additional assertions that he attempted to work with staff about his concerns. Franklin's complaint then was rejected, and Franklin appealed that second rejection. The

reviewing authority, Warden Dittmann, concluded that the rejection was appropriate.

While essentially conceding that Franklin followed the ICRS procedures to exhaust his retaliation claim generally, Deters argues that Franklin's failure to list him specifically in the inmate complaint as responsible for the retaliatory denial of recreational privileges establishes that he failed to exhaust his administrative remedies. However, Wisconsin's grievance procedures do not require prisoners to specify individuals in the complaint to adequately exhaust a claim. As such, the omission of Deters' name from the inmate complaint does not amount to a failure to exhaust this claim. *See Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011) (reversing grant of summary judgment and explaining that an inmate need not provide the names or descriptions of defendants in a grievance). Accordingly, since Deters has not proven that Franklin failed to exhaust his administrative remedies with respect to his retaliation claim, the court will deny his motion.


## II.     Motions to compel and for sanctions (dkt. ##100, 101)

Since the factual predicate is the same, the court will address Franklin's motions to compel and for sanctions together. Franklin seeks to compel additional discovery responses from defendants, and he requests sanctions for their failure to comply fully with his past discovery requests. In support, Franklin explains that he served defense counsel with his first set of interrogatories, along with admissions and document requests, on August 23, 2019, but the written responses were incomplete and he did not receive responsive documents until October 28, 2019. More specifically, Franklin challenges: (1) defendants' objections to his requests for disciplinary records on the ground that courts typically

uphold this type of request; (2) the State Defendants' response to his request for information about the pills he was prescribed between February 16, 2017, and February 23, 2017; (3) defendant Deters' "elusive memory"; and (4) the State Defendants' refusal to provide paperwork that was generated during his time in segregation. Finally, Franklin's motions request various forms of injunctive relief, including allowing him to purchase shoes from an outside vendor, as well as allowing him to see an eye doctor, kidney specialist and podiatrist.

Starting with the discovery responses, the State Defendants represents that counsel timely mailed responses to plaintiff's first set of admissions and first set for requests for production on September 25, and further that Franklin agreed to a two-week extension for the responses to the first set of interrogatories, which were sent timely on October 14. While the State Defendants do object to producing defendants Lunon's and Fink's disciplinary records, those defendants also each responded substantively that they do not have any disciplinary records after receiving Franklin's letter complaining about the absence of disciplinary records from Deters, Lunon and Fink on October 4.

As for Deters, he served his responses on Franklin on September 25, 2019, and while objecting to the disclosure of his disciplinary records, he argues that the objection was proper because that request did not seek relevant material, was overbroad and, in any event, those records are not in his possession. Finally, the State Defendants represent that the only deficiency Franklin communicated to them related to his requests for disciplinary records.

In reply, Franklin now claims that Deters is lying about *when* he produced documents and counsel for the State Defendants lied in representing that the disciplinary record objection was the only deficiency he raised. At bottom, Franklin appears to acknowledge receiving Deters' document production eventually and fails to explain specifically what other discovery deficiencies he actually raised with counsel for the State Defendants.

The court will deny plaintiff's motion to compel further responses to requests for the disciplinary records from Deters and Lunon. Nor will the court order the State Defendants to amend any of their current discovery responses, since Franklin has not indicated that he attempted to resolve those disputes informally, nor has he come forward with evidence suggesting that those responses were incomplete or inaccurate. However, Deters' response to Franklin's request to his disciplinary record is unsatisfying, since he has not represented that he requested those documents from his former employer or made other reasonable efforts to obtain those records from the DOC. Since his disciplinary history maybe relevant to Franklin's claims against him, the court will direct Deters to either produce his disciplinary records to Franklin or amend his response to this request by explaining exactly why he cannot obtain these records or that such records do not exist. Accordingly, Franklin's motion to compel will be granted in part.

The balance of Franklin's reply brief focuses on his desire to purchase his own footwear rather than the diabetic shoes the DOC has ordered him. He adds that he has recently been placed in restrictive housing after causing a disruption when he asked about his footwear. (*See* dkt. ##109, 109-1.) While burying what amounts to requests for

preliminary injunctive relief within a motion to compel is inappropriate, since plaintiff's request plainly lack merit, the court addresses them below.

Franklin submitted a declaration and evidence purporting to support his request for adequate shoes and complains that he has not been allowed access to various medical specialists. (Dkt. #102.) Franklin avers further that he has not seen any of the doctors that a non-defendant, RN Roslyn Huneke, represented to the court he would see. He also avers that NLCI staff (Huneke in particular) are denying his requests to order shoes from an outside vendor, even though staff knows that (1) he needs diabetic shoes and (2) he is willing to wear shoes that comply with the DOC's color requirements. (*Id.* ¶¶ 5, 7.) Franklin next provides a Health Service Request ("HSR") that he avers was submitted to the HSU on October 14 complaining that he has not yet received proper footwear. (Dkt. #102-1.) However, that same record also shows that: (1) Huneke responded to his request on October 15, writing shoes had been ordered for him; and (2) he would be sent to have them fitted when they arrived. (*Id.*) Although received more than a month earlier on September 3, 2019, Franklin refers the court to a letter he received from Huneke, in which she informed him that his shoes had been back-ordered, *and* noted that until he receives his new shoes, he would be allowed to wear his personal Nike shoes. (Dkt. #97-2.) Finally, in his reply brief, Franklin represents that on November 14, 2019, he was placed in Temporary Lock Up ("TLU") because he was complaining about having to wear standard shoes authorized by the state. Franklin claims that on his way to restrictive housing, he walked by non-defendant Huneke and asked about his personal shoes, to which she

responded, "Let's see what you file next.  Your shoes should be here soon."  (Dkt. #109 at 3.)

Having reviewed these materials, the court will deny his requests that the court intervene, at least *preliminarily*.  As a reminder, a "preliminary injunction is an extraordinary equitable remedy that is available only when the movant shoes clear need."  *Turnell v. CentiMark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015) (internal citations omitted).  Under the Seventh Circuit's approach, a district court engages in a two-step analysis where "[i]n the first phase, the party seeking a preliminary injunction must make a threshold showing that: (1) absent preliminary injunctive relief, he will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) he has a reasonable likelihood of success on the merits."  *Id.* at 661-62.  Only if the movant makes these showings, should the court then consider:  "(4) the irreparable harm the moving party will endure if the preliminary injunction is wrongfully denied versus the irreparable harm to the nonmoving party if it is wrongfully granted; and (5) the effects, if any, that the grant or denial of the preliminary injunction would have on nonparties."  *Id.* at 662.

Franklin's personal desire to be shielded from having to wear certain shoes does not come close to meeting the first element of this demanding standard.  Not only has the court already expressed skepticism about Franklin's claim for a preliminary injunction related to footwear (12/10/2018 Order (dkt. #15) at 9), Franklin's new arguments and evidence seems to reaffirm the reasons for that skepticism.  Indeed, it appears Franklin *is* currently being allowed to wear his personal Nike shoes (at least when not in restrictive housing), and Franklin has not yet received or tried on the ordered new shoes.  On this

record, therefore, it would be unreasonable to infer the likelihood of any harm, much less imminent irreparable harm. Moreover, Franklin's statements and evidence indicate that the NLCI's staff are making efforts to properly respond to and accommodate Franklin's need for adequate footwear. Wholly absent from Franklin's submission is any evidence (beyond his speculation) that the shoes that have been ordered for him are inadequate or will cause him severe pain. Finally, even if Franklin could overcome these hurdles, he has still not offered evidence suggesting that he has a *current* need to see a specialist that is not being met. Seeing no basis to grant Franklin the relief he seeks, the court will deny these motions in full.

One additional reminder to Franklin regarding his request for preliminary relief: as reflected above, Huneke is not a defendant in this lawsuit. The court previously offered Franklin the opportunity to amend his complaint to raise an argument as to why he should be able to proceed in this lawsuit on claims related to his care at NLCI, and he explicitly declined that opportunity. (Dkt. #90.) If he nevertheless believes Huneke has violated his constitutional rights and can pursue a claim against her pursuant to 42 U.S.C. § 1983, Franklin will need to exhaust administrative remedies with respect to these claims and then file a separate lawsuit against her for screening under 28 U.SC. § 1915A. Regardless, Franklin's frustrations with *Huneke's* handling of his footwear requests do *not* belong in this lawsuit.

## III. Motion for assistance in recruiting counsel and to appoint a medical expert witness (dkt. ##95, 96)

Finally, Franklin asks for the court's assistance in recruiting counsel and for the court to appoint a medical expert on his behalf. Starting with Franklin's request for assistance in recruiting counsel, a pro se litigant does not have a right to counsel in a civil case, *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014), but a district court has discretion to assist pro se litigants in finding a lawyer to represent them. *Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007). A party who wants assistance from the court in recruiting counsel must meet certain requirements. *Santiago v. Walls*, 599 F.3d 749, 760–61 (7th Cir. 2010).

To begin, Franklin must show that (1) he is unable to afford counsel and (2) he made reasonable efforts on his own to find a lawyer to represent him. Franklin has already satisfied these requirements. However, Franklin must also show that his is one of the relatively few cases where the legal and factual difficulty of the case exceeds the litigant's demonstrated ability to prosecute it. *Pruitt*, 503 F.3d at 654–55. "The question is not whether a lawyer would present the case more effectively than the pro se plaintiff," but instead whether the pro se litigant can "coherently present [his case] to the judge or jury himself." *Id.* at 655. While almost all of this court's pro se litigants would benefit from the assistance of counsel, but there are not enough lawyers willing to take these types of cases to give each plaintiff one. Accordingly, the court must decide for each case "whether this particular prisoner-plaintiff, among many deserving and not-so-deserving others, should be the beneficiary of the limited resources of lawyers willing to respond to courts'

requests." *McCaa v. Hamilton*, 893 F.3d 1027, 1036 (7th Cir. 2018) (Hamilton, J., concurring).

In support of his request, Franklin argues that this case is complex and requires expert medical testimony, and he suggests that defense counsel are taking advantage of his *pro se* status. As for his last assertion, the court simply disagrees. If anything, the record in this lawsuit to date supports a finding that counsel, if not necessarily all defendants, are acting honestly and in good faith to fulfill their obligations in this lawsuit. Indeed, thus far in this lawsuit, defense counsel seem to be making every effort to respond adequately to Franklin's communications and motions. Moreover, the discovery requests and responses the parties have filed suggest that defense counsel has been engaging with Franklin appropriately. In particular, while they have preserved objections to the scope or relevance of many of Franklin's discovery requests, they have also produced documents and responded fully to the majority of his requests. Furthermore, the State Defendants' submissions in response to Franklin's motion to compel indicate that Franklin and the State Defendants' counsel discussed the possibility of mediation, and they have agreed to reach out to Magistrate Judge Oppeneer to arrange for one (*see* dkt. #105-3). The fact that the parties have engaged in such conversations suggests that Franklin's characterizations of both counsel's and defendants' actions is overstated.

Ironically again, in that she is not even a named defendant, Franklin again raises concern about Nurse Huneke lying in a declaration as to Franklin's medical care after he was transferred to NLCI: while she represented that Franklin would be seeing an optometrist and would be sent to Divine Savior to get new shoes, Franklin did not attend

either appointment. (*See* dkt. #97 at 4.) The fact that Franklin did not attend those appointments does not mean Huneke's representation that he was *scheduled* for either appointment was a lie. In fact, Franklin submitted a September 3, 2019, communication from Huneke to Franklin explaining that she learned NLCI does not use Divine Savior for specialty care, so he would be sent to a different place for his podiatry needs. (*See* dkt. #97-1.) In any event, not only is Huneke not a defendant in this lawsuit, plaintiff's obligation during the discovery process in this case is to engage with opposing counsel. While Franklin may feel outmatched, his attention to detail and aggressive motion practice suggests the opposite.

As for Franklin's concern about the complexity of his medical claims, the court agrees this lawsuit is complex, both because of the number of defendants and because of the nature of his claims. However, nearly all *pro se* litigants are untrained in the law and face similar challenges, many of them are raising issues about medical care. There is no categorical rule that all prisoners challenging the adequacy of their medical care are entitled to counsel, much less a medical expert. *See Williams v. Swenson,* 747 F. App'x 432, 434 (7th Cir. 2019) (affirming district court's denial of request for counsel in medical care case); *Dobbey v. Carter*, 734 F. App'x 362, 364 (7th Cir. 2018) (same); *Romanelli v. Suliene*, 615 F.3d 847, 853 (7th Cir. 2010) (same). In this case in particular, the law governing Franklin's claims is well established, and it is not clear yet whether this case will turn on questions requiring medical expertise. *See Redman v. Doehling,* 751 F. App'x 900, 905 (7th Cir. 2018) ("Redman could litigate his claims himself because they turned on historical facts as opposed to medical evidence"). Indeed, many of Franklin's claims in this lawsuit

relate to the defendants' outright failure to provide treatment or medical care, and some of his claims are based on alleged retaliation, which does not involve analysis of complex medical issues.

Most importantly, Franklin is an experienced and adept litigator. Franklin advocates well for himself on paper and in person, and he has demonstrated exceptional familiarity with the details of his medical conditions and care, as well as the nature of his assorted claims. Additionally, Franklin's various motions and discovery requests illustrate that he is a highly motivated and relatively adept *pro se* litigator, able to follow closely the Federal Rules of Civil Procedure, the filings requirements and the deadlines in this case. Since the court is confident in Franklin's ability to advocate for himself with respect to his medical needs, and because many of the claims in this lawsuit may not require a medical expert, the court will decline to appoint a medical expert at this stage.

Both denial to recruited counsel and appoint a medical expert are without prejudice, subject to renewal if any of Franklin's claims survive summary judgment and proceed to trial. Going forward, Franklin should focus his attention on the matters most material to his ongoing claims. The court would also encourage both sides to consider the possibility of a mediation conducted by Magistrate Judge Oppeneer, and they should reach out to him directly if they agree to proceed.

ORDER

IT IS ORDERED that:

1) Defendant Timothy Deters' motion for partial summary judgment (dkt. #76) is DENIED.

2) Plaintiff Harrison Franklin's motion for assistance in recruiting counsel and to appoint a medical expert witness (dkt. ##95, 96) are DENIED.

3) Plaintiff' motions to compel and for sanctions (dkt. ##100, 101) are GRANTED IN PART AND DENIED IN PART. By February 6, 2020, Deters shall either produce his disciplinary records or amend his response to plaintiff's request for production as provided above.

Entered this 6th day of January, 2020.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge