IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

HARRISON FRANKLIN,

                         Plaintiff,                           OPINION AND ORDER

    v.

                                                                  18-cv-381-wmc

NURSE TIM DETERS,

                         Defendant.

     *Pro se* plaintiff Harrison Franklin, a state prisoner in the custody of the Wisconsin Department of Corrections ("DOC"), brought this lawsuit under 42 U.S.C. § 1983 to challenge the medical care that he received while he housed at the Columbia Correctional Institution.  With the state defendants having been previously dismissed by stipulation (dkt. #169), Franklin is proceeding on claims of Eighth Amendment deliberate indifference and First Amendment retaliation against remaining defendant Nurse Tim Deters, who worked as a nurse at Columbia in 2017 under a third-party contract with the DOC.[1]  Specifically, Franklin alleges that Deters was deliberately indifferent to his serious medical needs by (1) failing to treat him after he took expired insulin in February 2017, and (2)

---

[1] In addition to the state defendants and Deters, Franklin also named, and was granted leave to proceed against, John Does(s) 1-10, Jane Doe(s) 1-10, and Nurse Debra.  (Dkt. #15 at 10.)  The Wisconsin Department of Justice declined to accept service on behalf of these defendants, however, because it was unable to identify them, so the court informed Franklin that it would treat all of these defendants as Doe defendants unless and until otherwise identified.  (Dkt. ##18, 19.)  At the preliminary pretrial conference, Magistrate Judge Crocker also (1) explained how Franklin could use the discovery process to identify these Doe defendants, (2) set a deadline of July 15, 2019, for Franklin to submit an amended complaint naming any Doe defendants, and (3) warned Franklin that his failure to do so timely could result in the dismissal of these defendants.  (Dkt. #55 at 4-5.)  Franklin never filed an amended complaint, nor has he expressed any intention at this point of doing so.  Accordingly, these defendants will be dismissed from this lawsuit as well, as reflected in the revised case caption above.

failing to provide him with insulin in a timely manner in September 2017.  (Dkt. #1.)
Franklin further alleges that Deters retaliated against him in response to his requests for
insulin by revoking his recreation time.  Before the court is defendant Deters' motion for
summary judgment on all of Franklin's claims.  (Dkt. #147.)  Because the evidence of
record would not permit a reasonable jury to find in his favor, even when construed in a
light most favorable to Franklin, the court will grant defendant's motion and close this
case.[2]

## UNDISPUTED FACTS[3]

Plaintiff Harrison Franklin was incarcerated at Columbia from 2007 until 2019,
where he received treatment for diabetes and high blood pressure.  Defendant Tim Deters
worked as a nurse at Columbia from January 25, 2017, to September 15, 2017.

Franklin's claims against Deters arise out of two separate incidents.  The first
incident occurred between February 16 until February 23, 2017, when Franklin alleges
that he was given expired insulin "from staff."  (Dkt. #1 at 11.)  As a result, Franklin alleges
that he suffered side effects so severe that he spent most of that week on the floor of his
cell in a fetal position asking for help before an unidentified nurse finally came to his

---

[2] Defendant also filed a motion to compel plaintiff to sign a medical records authorization releasing
certain, additional medical records to defendant in the event this case were to proceed to trial.
(Dkt. #174.)  Since it will not, so the court will deny this motion as moot.

[3] Unless otherwise noted, the following facts are undisputed.  Consistent with its practice, the court
has drawn these facts from the parties' proposed findings and the evidence of record, all when
viewed in a light most favorable to plaintiff.  *See Miller v. Gonzalez*, 761 F.3d 822, 877 (7th Cir.
2014) ("We must . . . construe the record in the light most favorable to the nonmovant and avoid
the temptation to decide which party's version of the facts is more likely true.").

housing unit and told staff that the insulin he was receiving had expired.  (Dkt. #137 at 13:6-25.)  Two hours later, Franklin further alleges that Deters came to his cell and said that unless he admitted to stealing insulin, allowing it to expire, *and* using it to get attention from medical staff, neither Deters nor any other Columbia health care staff member would treat Franklin going forward.  (Dkt. ##1 at 11; 137 at 14:1-14; 162 at 4.)  Finally, Franklin alleges that he did not receive any medical treatment that day, or for "a number of months" thereafter.  (Dkt. #1 at 11.)

Franklin does not allege in the complaint (*see* dkt. #1 at 11), attest in his declaration (*see* dkt. #162 at 4), argue in his brief (*see* dkt. #158 at 2-3), or assert in his response to Deter's proposed findings of fact (*see* dkt. #164 at 16-17) that he has any personal knowledge or other admissible evidence of Deter's actual involvement in this incident, at least independent of what he claims the officer later told him.  Instead, all of the allegations against Deters set forth above appear to be based solely on what a non-party, correctional officer supposedly later told Franklin about Deters' involvement.  To his own recollection as to what was said, Franklin filed with his complaint a sworn declaration from fellow inmate Pierre Brown attesting to overhearing the conversation between Franklin and the correctional officer on March 24, 2017.  (Dkt. #4.)  Among other things, Brown attests that he overheard the officer tell Franklin that Deters had refused to treat Franklin unless he admitted to stealing insulin.  (Dkt. #4 at 2.)  Similarly, at his deposition, when asked whether Deters was in fact the nurse who refused to treat him in February 2017, Franklin testified that he believed so based on what the officer said, and further directed defense

3

counsel to Brown's affidavit.  (Dkt. #137 at 13:1-14.)[4]  In contrast, Deters denies that he ever provided Franklin expired insulin or witnessed Franklin suffer untreated medical issues, withheld medication, or that he refused to provide medical care.  (Dkt. #150 at 4.)

The second incident allegedly occurred on September 13, 2017.  Although Deters attests that he does not remember any such conversation, Franklin recalls telling Deters during his morning rounds on September 13 that he had yet to receive his morning dose of Lantus, a long-acting insulin Franklin takes with regular, shorter-acting insulin to control his blood sugar throughout the day.  (Dkt. ##23 at 5, #137 at 20:3-13, 150 at 2, 162 at 3.)  At his deposition, Franklin could not recall whether he had also been missing his regular insulin (dkt. #137 at 7), and Deters attests that Lantus "is not an emergency medication," because it "remains in the system for an extended period"; thus, missing a dose "would not cause imminent adverse effects and can be taken later."  (Dkt. #150 at 3.)  Even so, Franklin attests that Deters at least said he would get the Lantus for Franklin that morning, and claims Deters admitted to Franklin later that day that he had dropped off insulin on his unit.  (Dkt. ##137 at 20:4-7, 164 at 12.)  Throughout the morning, however, Franklin attests that he continued to ask two correctional officers about his insulin, without success.  (Dkt. ##1 at 13-14; 137 at 20:8-23.)  Later, Franklin alleges he became "visibly unstable on his feet," and "[s]taff reported that [his] speech was slurred."  (Dkt. #1 at 14.)  Although Franklin testified at his deposition that he did not recall whether he had experienced or

---

[4] Further confirming Franklin's lack of first-hand knowledge of defendant Deter's role, if any, he acknowledged not "remember[ing] everything that was happening to [him] at the time because [of his lack of] insulin, my blood sugar was so out of whack," and only knowing "bits and pieces of what went on."  (Dkt. #137 at 17:3-7.)

reported any symptoms that morning, he indicated that he "was sweating a lot" and "drinking a lot of water."  (Dkt. #137 at 22:13-20, 27:17-25.)

Things came to a head at 12:45 p.m. on September 12, an officer observed that Franklin was slurring his words and unsteady on his feet after he asked to sign up for recreation time.  The officer also recalled consulting with the health services unit ("HSU"), and then denied Franklin recreational time without first getting a blood glucose check, causing Franklin and the officer to argue.  (Dkt. ##156 at 2, 162 at 2.)  Specifically, Franklin accused the officer of denying him recreation as punishment for requesting his insulin, and he was annoyed that only after wanting to go outside did staff seem to want to offer medical treatment.  (Dkt. ##1 at 14; 137 at 27:4-10; 162 at 4.)  Apparently, this verbal altercation escalated to the point that Franklin was taken to the Disciplinary Segregation Unit and given a conduct report about a week later.  (Dkt. #156-1.)  Franklin attests the unit manager later told him that Deters was the nurse who had agreed to deny Franklin recreation on September 13, 2017, so that his health could be monitored.[5]  (Dkt. #137 at 24:1-22, 31:2-6.)  Deters again denies any involvement in any disciplinary actions against Franklin or in the decision to place him in segregation.  (Dkt. #150 at 4.)

Once in segregation, Franklin attests that Deters came to see him, but Franklin had to be convinced to allow Deters to treat him.  (Dkt. #137 at 28:6-20, 29:12-16.)  Deters performed a blood glucose check, but Franklin refused insulin in protest of being denied

---

[5] As previously noted, the unit manager has been dismissed from this case.  (Dkt. #169.)  In his declaration filed in support of the state defendants' motion for summary judgment, the unit manager does not identify by name the "HSU nurse" he consulted with on September 13, 2017. (Dkt. #156.)  Neither is that nurse identified in Franklin's conduct report (dkt. #156-1), nor in the state defendants' proposed findings of fact.  (Dkt. #166 at 12-20.)

recreation.  (Dkt. ##137 at 29:4-16, 164 at 12.)  In his medical record entry made that day, Deters specifically notes that he saw Franklin at around 1:15 p.m. for a blood glucose check as a result of his missing Lantus and indicating a level of 147 mg/dl.  (Dkt. ##150 at 4, 151-1.)  While that blood glucose level "may be higher than general ranges for a non-diabetic," Deters attests that it "is unremarkable for a diabetic" and "does not require treatment in and of itself."  (Dkt. #150 at 4.)  Franklin does not dispute this, admitting that he "had no symptoms of low or high blood sugar" at that time.  (Dkt. #162 at 3-4.)

OPINION

Defendant seeks summary judgment on plaintiff's claims of Eighth Amendment deliberate indifference and First Amendment retaliation.  A moving party is entitled to summary judgment if it can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  If the moving party meets this burden, then the non-moving party must produce evidence that would permit a jury to reasonably find for the non-moving party in order to survive this motion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-56 (1986).

In considering a summary judgment motion, a court views disputed facts in a light most favorable to the non-moving party.  With that principle in mind, the court will address the evidence as to each of plaintiff's claims in turn, explaining why defendant is entitled to summary judgment in his favor as to each.

## I.  Plaintiff's Deliberate Indifference Claims

Plaintiff alleges that defendant Deters was deliberately indifferent to his serious

medical needs on two occasions in 2017.  Prisoners have a general right to adequate medical care under the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97 (1976).  To prove a constitutional right to care was violated, plaintiff must demonstrate that:  (1) he had an objectively serious medical condition; (2) defendant was subjectively aware of an excessive risk to the prisoner's health and safety; and (3) defendant disregarded that risk.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Because plaintiff has produced insufficient evidence to create a genuine dispute of material fact with respect to either alleged incident, defendant is entitled to summary judgment in his favor on both claims.

### A. Defendant's claimed deliberate indifference to plaintiff's treatment needs after his use of expired insulin

Plaintiff first claims that defendant refused to treat his debilitating pain after he used expired insulin.  While plaintiff raises serious allegations in his complaint, as well as his affidavit, plaintiff's *actual* proof of defendant's supposed involvement in this incident is, as previously noted, based almost exclusively what a correctional officer supposedly told him approximately a month later, not on plaintiff's or anyone else's independent recollection of events.  *See* Fed. R. Civ. P. 56(c)(4) (an affidavit submitted for the court's consideration on summary judgment must "be made on personal knowledge").  Indeed, the *only* evidence plaintiff points to in support of the allegations against defendant beyond his own recollection of this conversation with the officer is the affidavit of another inmate who attests to overhearing the same conversation.  (Dkt. #4.)

Plaintiff's problem is that he offers no statement from the officer himself, and plaintiff's and Brown's recollection of the officer's statement is affidavit is inadmissible

hearsay both at summary judgment and at trial.  *See Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997) (affidavits "are admissible in summary judgment proceedings to establish the truth of what is attested" only to the extent that the "testimony would be admissible if he were testifying live").  This is because an out-of-court statement cannot be used to prove the truth of whatever it asserts, and that is the purpose of plaintiff offering the officer's statements.  Fed. R. Evid. 801(c) (hearsay is a statement not made "while testifying at the current trial or hearing" and is offered "to prove the truth of the matter asserted in the statement").  Specifically, plaintiff solely relies on the officer's purported, out-of-court statements, offered through his and Brown's testimony, to show that defendant was aware that plaintiff had been taking expired insulin and was in debilitating pain, yet refused to treat him.

Summary judgment is the proverbial "put up or shut up" moment in a lawsuit "when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003).  If plaintiff wanted the officer's alleged statements about defendant to be considered by the court, he should have taken the opportunity to obtain and file an affidavit, declaration, or other sworn statement from the officer or, failing that, to have taken his deposition by now.  Since he did not, there is no evidence from which a reasonable jury could find that defendant was even involved in this incident, let alone exhibited deliberate indifference by refusing to treat plaintiff.  Accordingly, defendant is entitled to summary judgment on this claim.

**B. Defendant's claimed deliberate indifference to plaintiff's need for insulin**

Plaintiff also claims defendant delayed treating his diabetes on September 13, 2017. Specifically, plaintiff claims he told defendant on the morning of September 13 that he had not received his long-acting insulin, Lantus, and continued to complain to two correctional officers, but was still not treated for his diabetes until around 1:15 p.m., sometime after he was denied recreation for refusing a blood glucose check.

To prevail on a deliberate indifference claim based on treatment delay, plaintiff would need to show that: (1) the delay "exacerbated [his] injury or unnecessarily prolonged [his] pain," *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010); and (2) the delay in his treatment was not just negligent, but it "approache[d] intentional wrongdoing." *Farmer*, 511 U.S. at 835. Plaintiff has produced insufficient evidence to create a genuine dispute of material fact of either element.

As for plaintiff's condition that day, plaintiff testified at his deposition that he recalled sweating and drinking a lot of water, but otherwise did not recall experiencing or reporting symptoms as result of missing his morning Lantus dose. (Dkt. #137 at 22:13-10, 27:17-25, 49:1-6.) In fairness, by lunchtime, there is evidence of other symptoms, including that staff (a) observed plaintiff slurring his speech and being unsteady on his feet, and (b) responded by keeping plaintiff on his unit to monitor his health and administer a blood glucose test, rather than allow him to proceed outside for recreation. At that point, plaintiff admittedly became combative, albeit apparently because he did not want to be denied recreation time, which resulted in his being taken to segregation, where he again refused treatment. When defendant was able to test plaintiff's blood sugar level

9

at approximately 1:15 p.m. on September 13, however, there is no dispute that it was slightly elevated, but *not* dangerously so, nor that plaintiff was asymptomatic for hyperglycemia and hypoglycemia.

Moreover, plaintiff produced no evidence to undermine defendant's assertion as a nurse that a single, missed dose of Lantus "would not cause imminent adverse effects" because the medication is long-lasting. (Dkt. ##150 at 3, 164 at 6-7.)[6] Nor does plaintiff allege experiencing any serious injury or prolonged pain (or any pain) from a several-hour delay or, as a result, that he suffered any worsening of his diabetes or pain afterward. Accordingly, there is insufficient evidence to support a finding that the several-hour delay before receiving Lantus on September 13, 2017, caused plaintiff material injury or pain that morning, or otherwise "exacerbated" his condition. *McGowan*, 612 F.3d at 640.

And even though plaintiff exhibited symptoms later that morning concerning enough that staff ultimately kept him from recreation, a reasonable jury would still not have a basis to find that defendant was deliberately indifferent to plaintiff's medical needs. To begin, plaintiff alleges that he told defendant he did not have his long-acting insulin on the morning of the 13th, and that defendant admitted to dropping off insulin on plaintiff's unit only later that day. (Dkt. ##162 at 3, 164 at 3-4, 12.) While defendant denies these allegations, even if true, as discussed, there is no evidence that missing a single dose of long-acting insulin constitutes any kind of a medical emergency.  (Dkt. #150 at 3.)

---

[6] Even if defendant is not established as having the specific medical expertise to opine on the possible harmful impacts of missing one dose of a Lantus prescription, as discussed above, it is *plaintiff* who would have the burden to show the likely injury or pain caused by loss of a single dose of long-lasting insulin.

Moreover, to the extent defendant was aware that plaintiff had missed a Lantus dose and could have provided that dose sooner, that evidence only rises to the level of negligence, but more than negligence or even gross negligence is required to prevail on a constitutional claim. *See Johnson v. Doughty*, 433 F.3d 1001, 1012-13 (7th Cir. 2006) ("in the context of medical professionals, it is important to emphasize that medical malpractice, negligence, or even gross negligence does not equate to deliberate indifference").

Finally, plaintiff asserts that as the morning went on, he continued complaining about his lack of insulin to two correctional officers, not to the HSU generally or to defendant specifically, who plaintiff did not see again until after he was in segregation. Accordingly, there is *no* evidence that defendant would have been aware of any worsening symptoms, or any symptoms at all, until the situation came to a head after lunch and an officer contacted the HSU. *See Brennan*, 511 U.S. at 837 ("the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"). Plus, at that point, plaintiff alleges that defendant responded by agreeing to keep plaintiff on his unit in order to monitor his health, and it was plaintiff who then became combative at being denied recreation, initially refusing treatment from defendant in protest, including testing blood sugar levels or receiving insulin, whereas *defendant* was the one persisting and able to at least perform a glucose check establishing plaintiff's level was not dangerously high.

In the end, medical treatment is not constitutionally inadequate simply because it was offered at a time the patient believes inconvenient. Here, the overwhelming evidence shows that defendant was responsive to plaintiff's evolving medical needs, rather than

engaged in "intentional wrongdoing." *Farmer*, 511 U.S. at 835. Because a reasonable jury could not conclude otherwise on this record, defendant is entitled to summary judgment in his favor on plaintiff's claims of deliberate indifference.

## II. Plaintiff's Retaliation Claim for Denial of Recreation

Finally, and relatedly, plaintiff alleges that by denying him recreation on September 13, 2017, defendant was retaliating against him for complaining about his insulin. To succeed on a retaliation claim, plaintiff would need to show that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a consequence likely to deter First Amendment activity in the future; and (3) the First Amendment activity was a motivating factor in defendant's decision to retaliate. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). To the extent plaintiff's complaints about his insulin were a protected activity, and even assuming *defendant* was the HSU nurse who agreed that plaintiff could not attend recreation that day, that decision was demonstrably *responsive* to, not in retaliation for, plaintiff's medical treatment needs.

As a threshold matter, even if preventing plaintiff from going to recreation constituted retaliation rather than good health care, plaintiff has offered no admissible evidence to suggest that it was actually the *defendant* who was involved in revoking that privilege. As is the case with defendant's alleged involvement in plaintiff's use of expired insulin in February 2017, plaintiff's only evidence that defendant was involved in also denying recreation is plaintiff's own attestation that his unit manager later said defendant was the HSU nurse involved in that decision. (Dkt #164 at 14.)

As previously noted, the court may only consider an affidavit at summary judgment

12

to the extent that its content would be admissible evidence at trial. *Eisenstadt*, 113 F.3d, 742. Here, the unit manager's alleged statements as presented in plaintiff's affidavit are inadmissible hearsay and may not be considered, at least for the truth of the matter asserted, nor does plaintiff specify anywhere else in the record where this HSU nurse is identified. (Dkt. ##57, 156, 156-1, 166 at 12-20.) Plaintiff has, therefore, not produced any competent evidence establishing that defendant was the HSU nurse involved in any allegedly retaliatory conduct against him on September 13, 2017.

Even if plaintiff has offered sufficient evidence that defendant *was* the HSU nurse involved in the decision to deny plaintiff recreation time on September 13, 2017, no reasonable jury could find on this record that the decision so was motivated by retaliation, as opposed to a reasonable response to a medical need. As noted, plaintiff claims he was requesting insulin all morning, and when he requested recreation time after lunch, he appeared to be slurring his words and unsteady on his feet. Accordingly, a correctional officer allegedly consulted with defendant and denied plaintiff recreation unless he had his blood glucose tested. After plaintiff initially refused to comply, a conflict ensued. At that point, plaintiff was taken to segregation where he recalls "about 20 officers down there trying to chain [him] down," so that defendant could check his blood sugar. (Dkt. #137 at 28:9-11.) Defendant also offered plaintiff insulin, which plaintiff refused at that time, but later accepted. (Dkt. #137 at 29:12-16.) Plaintiff ultimately was not permitted to go to recreation that day, and he was issued a conduct report about a week later for disruptive conduct and disobeying orders.

A reasonable jury could *not* infer from this limited evidence that the reason plaintiff

13

was not allowed to go to recreation was anything other than his potential need for medical treatment and his own disruptive conduct.  Indeed, while plaintiff had been requesting insulin all morning, there is no evidence *anyone* was aware that he was experiencing worsening health symptoms until he asked to go outside.  In addition, plaintiff does not materially dispute that defendant and the correctional officer had an affirmative responsibility to delay plaintiff's recreation time pending a blood sugar test, at least once a diabetic inmate began exhibiting behaviors that might be symptomatic of hypoglycemia or hyperglycemia.  (Dkt. #164 at 8-9.)  That plaintiff was annoyed by the timing of this medical intervention does not support a different conclusion.  Finally, although plaintiff correctly notes that loss of recreation is a penalty under Department of Corrections, the evidence of record indicates that to the extent he received this penalty for his disruptive conduct, it was not for requesting insulin or medical care.

Had plaintiff promptly accepted the treatment he had been asking for, even though it came at an inconvenient time, he may have been able to return to recreation.  Indeed, his disruptive conduct violated the rules and warranted consequences, which *may* have been unjust if instituted solely in response to his requests for insulin, but again there is no evidence for a reasonable jury to find this was the cause of his discipline.  Plaintiff has offered no evidence beyond his own opinion to support his contrary allegation that defendant (as well as security staff) was motivated to deny recreation to punish rather than monitor and treat him for his own safety once it became apparent that plaintiff might be suffering concerning symptoms.  Accordingly, defendant is entitled to summary judgment on this claim as well.

14

ORDER

IT IS ORDERED that:

1) Defendant Nurse Tim Deters' motion for summary judgment (dkt. #147) is GRANTED.

2) Defendant's motion to compel (dkt. #174) is DENIED as moot.

3) Defendants John Doe(s) 1-10, Jane Doe(s) 1-10, and Nurse Debra are DISMISSED from this lawsuit.

4) The clerk of court is directed to enter judgment in defendant's favor and close this case.

Entered this 19th day of November, 2021.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge